IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MMC 20/20 INC.,<br><br>                  *Plaintiff,*<br><br>    v.<br><br>CAPITAL BLUE CROSS,<br><br>                  *Defendant.* | CIVIL ACTION<br>NO. 18-3592 |

**PAPPERT, J.**                                                                                         January 4, 2019

**<u>MEMORANDUM</u>**

MMC 20/20 Inc. alleges that Capital Blue Cross breached a written contract between the two entities by failing to pay the full amount owed to MMC for services provided. In its Amended Complaint, MMC alleges breach of contract (Count I), account stated (Count II), unjust enrichment (Count III) and *quantum meruit* (Count IV). Capital moves to dismiss Counts II, III and IV for failure to state a claim. The Court grants the Motion. The reasons supporting the Court's decision show that further amendment of any of these claims would be futile.

I

A

MMC is a consulting firm that provides risk adjustment services to assist Medicare health plans ("MHPs") seeking additional insurance premiums from Medicare. (Am. Compl. ¶ 9, ECF No. 13.) Capital is an insurance company and MHP that offers Medicare insurance coverage. (*Id.* at ¶ 10.) As an MHP, Capital prepares and presents information relating to insureds' diagnoses and conditions to the Centers

1

for Medicare and Medicaid Services ("CMS"), which then compensates Capital for providing coverage to its insureds.  (*Id.* at ¶¶ 16–17.)

From July of 2004 to June 30, 2016, Capital contracted with MMC to perform risk adjustment services in connection with its CMS submissions.  (*Id.* at ¶¶ 18, 20.) MMC asserts that the parties "entered into, extended, and maintained a series of written agreements forming the contract at issue" and that Capital "acknowledged the express contractual relationship on multiple occasions."  (*Id.* at ¶¶ 20–21, 28, Exs. 1–3.) MMC claims that it provided Capital with services such as "analysis of submission files initially prepared by Capital to determine whether any Insureds likely possessed diagnoses beyond, and in addition to, those included by Capital; investigation of any identified additional potential diagnoses . . . verification of additional potential diagnoses . . . ." (*Id.* at ¶ 22.)

The contract provided for a "results-oriented fee structure," meaning that MMC's compensation was "entirely contingent upon Capital's realization of a benefit . . . in the form of added revenue received by Capital vis-à-vis CMS Capitation Payments."  (*Id.* at ¶ 26.)  Although the contracted contingency fee percentage varied over the years, MMC was to receive payment from Capital in the amount of 27% of the added revenue recovered by Capital from its CMS submissions.  (*Id.* at ¶ 27.)  MMC invoiced Capital seventy times throughout their contractual relationship.  (*Id.* at ¶ 29.)  MMC alleges that Capital paid sixty-eight invoices "in full, without adjustment, objection, or issue." (*Id.*)  The two remaining invoices, dated October 11 and October 30, 2017, are the subject of this lawsuit.

B

MMC states that the most recent extension of its written contract with Capital is an August 20, 2014 Letter Agreement signed by Capital on August 21, 2014. (*Id.* at ¶ 38, Exs. 1_18–19.) In it, the parties "agree[d] to extend the existing letter agreement from July 9th 2004, amended in 2010, 2012 and 2013 to now include MMC work performed through June 30th 2016." (*Id.* at Ex. 1_18.) It also confirmed that Capital would pay a "contingency fee in the amount of 27% of the retrospective recoveries." (*Id.* at Ex. 1_19.) MMC continued to provide services pursuant to this extension through June 30, 2016, while Capital continued to reap the benefits of those services. (*Id.* at ¶¶ 40–41.)

By the end of June 2017, CMS advised the parties the "final . . . payments to [Capital] which MMC affected" could be expected in October 2017. (*Id.* at Ex. 4_2–4.) On October 11, 2017, MMC sent to Capital an invoice in the amount of $676,284, reflecting MMC's services provided "for 2015 Dates of Service/2016 Payment," stating that payment of the invoice was due within "30 days of receipt." (*Id.* at Ex. 5.) According to MMC, this was the "first bill for [Capital's] recoveries on the October payment from CMS" and MMC told Capital to expect an additional bill. (*Id.*) On October 30, 2017, MMC sent that bill, also due within 30 days, for $116,513. (*Id.* at Ex. 6.) This was the "final invoice" and was "in addition to the one sent a few weeks ago," which MMC asked about again. (*Id.*) Despite efforts to provide Capital with the member level details lists to verify the two unpaid invoices, Capital failed to pay the bills. (*Id.* at ¶¶ 46, 49, 50, 52, 54, Exs. 7, 8_6.) MMC sought payment "no less than five times" for each unpaid invoice. (*Id.* at ¶¶ 55, 62.)

In early January, Capital told MMC it was entitled only to a small portion of the monies sought because the remaining amounts were attributable to other vendors performing similar services for Capital. (*Id.* at Ex. 3.) Capital accordingly sent MMC a check for $116,824.68 as "total, full and final settlement payment" to MMC. (*Id.*) On January 17, 2018, MMC rejected Capital's proposed partial payment. (*Id.* at ¶ 59, Ex. 10.) MMC wrote to Capital again on January 31, 2018, about the outstanding invoices. (*Id.* at Ex. 12.) Capital did not respond to either letter. (*Id.* at ¶ 61, Ex. 11.) Capital owes MMC a total of $657,972.32, with interest accruing. (*Id.* at ¶¶ 69–71, 77.)

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the

4

assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

III

In Count II of its Amended Complaint, MMC alleges a claim for account stated because Capital "accepted and retained the Unpaid Invoices without objection and without payment for an unreasonable and uncustomary amount of time . . . [and] assented to the accuracy and correctness of the calculations." (Am. Compl. ¶ 105.) "An account stated is an account in writing, examined, and expressly or impliedly accepted by both parties thereto." *Braverman Kaskey, P.C. v. Toidze,* No. 09–3470, 2011 WL 4851069, at *4 (E.D. Pa. Oct. 12, 2011). To state a cause of action for an account stated, a plaintiff must sufficiently plead that: (1) there has been a running account; (2) a balance remains due; (3) the account has been rendered upon the defendant and (4) the defendant has assented to the account. *Citibank (S. Dakota) N.A. v. Ambrose*, No. 10-S-574, 2010 WL 3923159, at *405 (Pa. Com. Pl. June 8, 2010) (citation omitted).

5

An account stated claim cannot exist where there is a dispute as to the accuracy or correctness of the debt. *Internazionale Graniti S.R.L. v. Monticello Granite Ltd.*, No. CIV.A.07-1790, 2009 WL 2461803, at *2 (E.D. Pa. Aug. 12, 2009). Accepting MMC's allegations as true, such a dispute exists here. MMC specifically alleges that Capital contested the accuracy and correctness of the invoices:

> "[B]y letter dated January 8, 2018 . . . Capital claimed . . . that MMC 20/20 was entitled to only a fraction of the total amount invoiced in the October 11th Invoice and that the remaining accounts were attributable to other vendors performing similar Risk Adjustment Services for the applicable time period (2015 Dates of Service / 2016 Payment Year), and issued a check in the amount of $116,824.68 . . ."

(Am. Compl. ¶ 57.) The January 8 letter is attached as an exhibit to MMC's Amended Complaint. In it, Capital's Senior Medical Director, responding to MMC's inquiry on "the status of the MMC invoices," (*id.* at Ex. 8_4), stated that Capital "analyzed [its] Risk Adjustment payments for the Payment Year 2016" and concluded that the "total, full and final settlement payment to MMC 20/20 [was] $116,824,68," (*id.* at Ex. 3). Other exhibits attached to the Amended Complaint make clear that Capital's position pertained to all payments for 2016, which encompassed the remaining unpaid invoices from October 11th and October 30th. *See* (*id.* at Exs. 8_2, 8_3, 8_4, & 9). Since MMC alleges that a dispute exists with respect to the amount Capital owes under the remaining unpaid invoices, the Court dismisses the account stated claim.

IV

As an alternative to its breach of contract claim, MMC alleges in Count III that Capital has been unjustly enriched by benefitting from MMC's risk adjustment services. (*Id.* at ¶¶ 111–119.) Capital urges the Court to dismiss this claim because MMC has "repeatedly allege[d] that its relationship with Defendant is founded on the

6

written contractual agreement." (Mot. Dismiss at 3–4.) MMC, in turn, argues that Capital has confused its ability to plead alternative causes of action with the ability to recover on both of those claims and that dismissal is "premature at this stage of the proceedings" because MMC fears that Capital "may, at some point, challenge the existence or validity of the Contract." (Resp. Opp'n at 6, 13.)

To state an unjust enrichment claim, a plaintiff must allege: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payment of value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (1999). Under Federal Rule of Civil Procedure 8(e)(2), parties are permitted to pursue alternative theories of recovery based on both breach of contract and unjust enrichment. Fed. R. Civ. P. 8(e)(2); *Constar v. Nat'l Distribut. Ctrs.,* 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000). However, "'the quasi-contractual doctrine of unjust enrichment [is] inapplicable when the relationship between parties is founded on a written agreement or express contract.'" *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (quoting *Schott v. Westinghouse Elec. Corp.,* 436 Pa. 279, 290, 259 A.2d 443, 448 (1969); *see Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir. 1987) ("Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of services involved,' there can be no recovery under a *quantum meruit* theory.") (quoting *Murphy v. Haws & Burke,* 344 A.2d 543, 546 (1975)). Thus, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss

7

when the relationship between parties is founded on a written instrument." *Harold ex rel. Harold v. McGann,* 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).

The existence of an express contract between the parties will not, in and of itself, always preclude an unjust enrichment claim. *See Phila. Hous. Auth. v. CedarCrestone, Inc.*, 562 F. Supp. 2d 653, 656 (E.D. Pa. 2008).[1] At the motion to dismiss stage, the Court must determine "whether there is any dispute as to the existence of the express contract and whether the scope of the contract includes the transaction that is the basis for the claim." *Id.* The Court must find:

> that the contracts entered by the parties . . . encompass the work that is the subject of [the] claim . . . that the relationship between [the parties] regarding the subject of [the] claim is founded on the contracts . . . [t]aking the facts pled in [the] amended complaint as true and resolving all doubts in favor of [the non-movant] . . .

*Id.* (quoting *HCB Contractors v. Rouse & Assocs., Inc.,* No. 91-5350, 1992 WL 176142, at *7 (E.D. Pa. July 13, 1992)).

In *Promark Realty Group, Inc. v. B & W Associates,* neither party disputed that the plaintiff and the defendant "had a direct relationship through their brokerage agreement." No. 02-1089, 2002 WL 862566, at *4 (E.D. Pa. May 1, 2002). On a motion to dismiss, the plaintiff sought "to save [the *quantum meruit]* claim by arguing that it is permitted to plead unjust enrichment as an alternative to its contract-based claim." *Id.* The court dismissed the claim because "as pled in the complaint, all the benefits Plaintiff could possibly have conferred on [Defendant] . . . were to be provided pursuant to the contract between the parties." *Id.* Citing to *Promark's* reasoning, the court in *Philadelphia Housing Authority* also dismissed the defendant's *quantum meruit*

---

[1] The court in *Philadelphia Housing Authority* analyzed a *quantum meruit* claim, but *quantum meruit* and unjust enrichment claims are analyzed the same way. *See infra* Part V.

8

counterclaim after identifying its "relevant allegations" regarding the existence of a contract between the parties and determining that the defendant was owed payments "under" that contract for services performed "pursuant to that contract." 562 F. Supp. 2d at 656–57.

MMC alleges, in detail and supported by exhibits attached to its Amended Complaint, that its relationship with Capital is founded on express, written agreements, (Am. Compl. at ¶¶ 6–7, 18–22, 26–29, 36–40, 73, 78–92), and that the parties entered into a "valid and enforceable contract," (*id.* at ¶ 79). Pursuant to that contract, MMC performed risk adjustment services for Capital's benefit. (*Id.* at ¶¶ 81, 94.) MMC alleges that those are the very services by which "Defendant has been unjustly enriched." (*Id.* at ¶ 119.) According to the Amended Complaint, the dispute is not over the existence of the contract—MMC alleges that in fact Capital paid sixty-eight of the seventy invoices pursuant to the contract. (*Id.* at ¶¶ 29, 95.) The dispute, rather, pertains to the amount Capital believes it owes on the remaining two invoices; Capital even sent MMC a check for what it believes it owes. (*Id.* at ¶ 57, Ex. 3.) Since the "contract entered by the parties encompasses the work that is the subject of" the unjust enrichment claim, *Phila. Housing Authority*, 562 F. Supp. 2d at 656 (quoting *HCB Contractors v. Rouse & Assocs., Inc.,* 1992 WL 176142, at *7), this claim is dismissed.

V

In Count IV, MMC alleges *quantum meruit*, asserting that Capital "has unjustly enriched itself at Plaintiff's expense" and is "liable to MMC 20/20 in *quantum meruit* for the value of the risk adjustment services." (Am. Compl. ¶¶ 121, 125.) Capital argues

9

that "*quantum meruit* is an equitable remedy for unjust enrichment, not a stand-alone cause of action" and thus jointly addresses MMC's *quantum meruit* claim with its unjust enrichment claim in its Motion. (Mot. Dismiss at 2.)

"Quantum meruit is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment." *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 998 (3d Cir. 1987). Some courts treat *quantum meruit* and unjust enrichment as synonymous. *See Powers v. Lycoming Engines,* 328 Fed. App'x 121, 124–25 (3d Cir. 2009) ("Unjust enrichment, rather, an equitable remedy and synonym for quantum meruit, is a form of restitution.") (non-precedential) (internal quotation marks and citation omitted); *see also Phila. Hous. Auth.*, 562 F. Supp. 2d at 655 n.3 ("'[T]he terms *quantum meruit* and unjust enrichment are often used interchangeably.'") (citation omitted). Nonetheless, a claim of *quantum meruit* raises the issue of whether a party has been unjustly enriched, and in order to prove such claim a party must successfully prove the elements of unjust enrichment. *Mitchell v. Moore*, 729 A.2d at 1202 n.2; *see Goldsmith Assocs., Inc. v. Del Frisco's Rest. Grp., LLC*, No. CIV.A. 09-1359, 2009 WL 3172752, at *2 (E.D. Pa. Oct. 1, 2009) (analyzing claims of unjust enrichment and *quantum meruit* together because "a claim for unjust enrichment is the same as a claim in *quantum meruit*"). MMC's *quantum meruit* claim is therefore duplicative of its claim for unjust enrichment in Count III and is dismissed accordingly. *See Caudill Seed & Warehouse Co., Inc. v. Prophet 21, Inc.,* 123 F. Supp. 2d 826, 834 (E.D. Pa. 2000) (dismissing a count because it is duplicative of another count).

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

GERALD J. PAPPERT, J.